# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-3129 |
| ANRDEA E. SYWULAK, Ph.D. | : | |
|     Defendant. | : | |

## MEMORANDUM AND ORDER

**Tucker, J.**                                                                                                                   **October ___, 2010**

      Presently before this Court is Defendant's Motions to Dismiss (Doc. 4). For the reasons set forth below, upon consideration of Defendant's Motion, Plaintiff's Response in Opposition thereto (Doc. 8), and Defendant's Reply (Doc. 10), this Court will grant Defendant's Motion in part. Count IV of Plaintiff's Complaint is dismissed for failure to state a claim. Counts I, II, III, V, VI, and VII are dismissed for lack of subject matter jurisdiction and the case is remanded to state court for resolution of these remaining state law counts.

## BACKGROUND

      From the evidence of record, taken in a light most favorable to the Plaintiff, the pertinent facts are as follows. Plaintiff, Jane Doe, is the natural mother of a minor child T.K., born in April 2000. Plaintiff was the primary custodial parent of T.K. from the child's birth through May 2007. On or about July 27, 2006, the father of T.K. ("John Doe") filed a petition for modification of custody with the Court of Common Pleas of Montgomery County. Plaintiff and John Doe retained the services of the Defendant for the purposes of conducting a custody evaluation. Defendant met with Plaintiff, John Doe, and T.K. between January 24, 2007 and April 1, 2007 to conduct the evaluation. During those meetings, Plaintiff advised Defendant that

T.K. had previously been diagnosed with various psychological ailments and that he was sexually inappropriate. John Doe, however, reported that T.K. was a "normal child" who only "acted out" while in his mother's care.

On or about May 4, 2007, prior to the completion of her custody evaluation report, Defendant informed the Court that Plaintiff suffered from a form of child abuse known as Munchausen Syndrome by Proxy ("MSBP")[1], was homicidal, suicidal and that Plaintiff suffered from an unidentified psychopathology. Defendant reported that Plaintiff induced T.K. to act in such a fashion as to mimic symptoms of bipolar disorder, ADHD, and mood disorders. Defendant further suggested that T.K. did not suffer from any psychological deficits and that he was not sexually inappropriate unless he was in his mother's custody. Defendant further reported that Plaintiff would kill her own child and then herself to keep from relinquishing custody of T.K. Plaintiff alleges that Defendant never reported her suspicions of abuse to the proper

---

[1] According the National Institutes of Health, MSBP is "a form of child abuse in which a parent induces real or apparent symptoms of a disease in a child."
> This syndrome almost always involves a mother abusing her child by seeking unneeded medical attention for the child. It is rare and poorly understood. The cause is unknown. The mother may fake symptoms of illness in her child by adding blood to the child's urine or stool, withholding food, falsifying fevers, secretly giving the child drugs to make the child throw up or have diarrhea, or using other tricks, such as infecting intravenous (given through a vein) lines to make the child appear or become ill. These children are often hospitalized with groups of symptoms that don't quite fit any known disease. Frequently, the children are made to suffer through unnecessary tests, surgeries, or other uncomfortable procedures. The parent is usually very helpful in the hospital setting and is often appreciated by the nursing staff for the care she gives her child. She is often seen as devoted and self-sacrificing, which can make medical professionals unlikely to suspect the diagnosis of Munchausen syndrome. Her frequent visits unfortunately also make the child accessible to her so that she can induce further symptoms. Changes in the child's condition are almost never witnessed by hospital staff and almost always occur only in the mother's presence. Munchausen syndrome occurs because of psychological problems in the adult, and is generally an attention-seeking behavior. The syndrome can be life-threatening for the child involved.

http://www.nlm.nih.gov/medlineplus/ency/article/001555.htm (Last visited May 20, 2010).

authorities. In response, however, the Court issued an Emergency Order for Custody suspending all custodial rights of Plaintiff and ordering immediate full legal and physical custody of T.K. to his father. Between July 2007 and December 10, 2007, Plaintiff was only allowed two, two-hour supervised visits with T.K. per month.

On December 10, 2007, Plaintiff and John Doe appeared for trial in the Court of Common Pleas of Montgomery County, and following extensive discussions with the presiding judge, an interim Order was entered in which John Doe retained primary custody. The Interim Order granted Plaintiff partial unsupervised custody.

On July 9, 2008, Plaintiff and John Doe entered into a final Agreement for Custody which provided for shared physical and legal custody of T.K. The presiding judge also dismissed Defendant's findings that Plaintiff suffered from MSBP.

On May 4, 2009, Plaintiff filed a Complaint against Defendant in the Court of Common Pleas of Chester County alleging the following seven counts: Count I for malpractice; Count II for negligence; Count III for breach of contract; Count IV for violation of civil rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1988; Count V for intentional infliction of emotional distress; Count VI for negligent infliction of emotional distress, and Count VII for defamation.

On July 15, 2009, Defendant removed the case to federal court on the basis of federal question jurisdiction. Specifically, Defendant notes that in Count IV of the Complaint, Plaintiff avers federal civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985, and 1988. On August 14, 2009, Defendant filed the Motion to Dismiss Plaintiff's Complaint (Doc. 4) for failure to state a claim. Plaintiff filed a Response in Opposition thereto (Doc. 8) on September 15, 2009, and Defendant filed a Reply to Plaintiff's Response (Doc. 10) on September 25, 2009. The Court

now addresses this pending motion.

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

## DISCUSSION

Defendant moves to dismiss each of the Counts in Plaintiff's Complaint for several reasons. With respect to Count IV for violations of her civil rights under 42 U.S.C. §§ 1983, 1985, and 1988, Defendant argues, inter alia, that these claims should be dismissed on the basis

of judicial immunity arising out of her actions as a court-appointed psychologist retained to perform an evaluation in a custody action. For reasons stated below, the Court agrees with Defendant and shall dismiss Count IV of Plaintiff's Complaint.

**I. Dismissal of Count IV of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim**

In Count IV of the Complaint, Plaintiff alleges that Defendant violated her civil rights under 42 U.S.C. §§ 1983, 1985, and 1988 when Defendant allegedly sought and obtained court orders based on misrepresentations to the Court that Plaintiff suffered from MSBP, was homicidal, suicidal and an extreme danger to her child. Plaintiff also avers that Defendant failed to notify the proper authorities of the suspected child abuse as required by Pennsylvania law. Plaintiff claims Defendant's conduct deprived Plaintiff of her rights to equal protection and due process under the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

Section 1983 is not a source of substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." City of Monterey v. Del Monte Dunes, 526 U.S. 687, 749 n.9 (1999). To prevail in a Section 1983 action, a plaintiff must prove: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

Similarly, Section 1985 is not a source of substantive rights; rather, it prohibits conspiracies to deprive a person of federal rights conferred by the United States Constitution and federal statutes. See Ludwig v. Berks County, Pa., 313 Fed. App'x 479, 481 (3d Cir. 2008). To prevail in a Section 1985 action, a plaintiff must prove that (1) defendants engaged in a

conspiracy; (2) the conspiracy's purpose was to deprive a person or class of persons of equal protection of the laws or equal privileges and immunities under the laws; (3) defendants committed an act in furtherance of the conspiracy; and (4) defendants' actions resulted in injury to the plaintiff. See Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

Section 1988 allows a prevailing party in an action under, inter alia, Section 1983 and Section 1985 to obtain attorney's fees from the non-prevailing party. See 42 U.S.C. § 1988. As an initial matter, to establish a claim under Section 1988, a plaintiff must prove a deprivation of a "right secured by the Constitution and the laws of the United States." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The crux of Defendant's argument in favor of her motion to dismiss Count IV is that she is entitled to judicial immunity for the federal claims arising out of her actions as a court-appointed psychologist retained to perform an evaluation in the custody action. To support this contention, Defendant cites several Third Circuit cases including Galvani v. Pennsylvania, No. 08-0393, 2008 WL 7821748, at *6-8 (M.D. Pa. Nov. 4, 2008) (discussing the Third Circuit's recognition that judicial immunity has been expanded to protect individuals acting as court-appointed doctors and psychiatrists as well as guardians ad litem, [and] social workers involved in the initiation and prosecution of child custody proceedings).

Plaintiff disagrees and reiterates that Defendant was acting on behalf of the Court of Common Pleas of Montgomery County as a court-appointed expert, and as such she qualified as a state actor. Plaintiff further argues that Defendant violated Plaintiff's constitutional rights by "recommend[ing] that Plaintiff's parental rights be immediately suspended" and "obtaining court orders that precluded Plaintiff from seeing her child." With respect to Defendant's immunity

argument, Plaintiff argues that Defendant is not entitled to judicial immunity because she did not report the suspected child abuse to the Department of Child Protective Services prior to reporting her findings to the family court. Plaintiff also contends that Defendant should not be allowed to argue judicial immunity for the purposes of some allegations and then argue that she is a private citizen and not a state actor for the purposes of other allegations.

"The Third Circuit has recognized the inherent sensitivity of child custody proceedings and . . . the special need to protect judicial officers attempting to facilitate these proceedings." Galvani, 2008 WL 7821748, at *7 (citing Ernst v. Child & Youth Servs. of Chester County, 108 F.3d 486, 496-97 (3d Cir. 1997)). In this jurisdiction, court-appointed custody evaluators, like psychiatrists and doctors, fall under the umbrella of individuals requiring that special protection, and "[a]ccordingly, judicial immunity has been extended to cover [them]." See id. (citing Hughes v. Long, 242 F.3d 121, 127-28 (3d Cir. 2001)).

Court-appointed doctors charged with conducting custody evaluations are viewed as "arms of the court" and receive judicial immunity because of the important, "quasi-judicial" functions they perform during child custody proceedings. Hughes, 242 F.3d at 126. These functions include (1) engaging in "neutral fact-finding" by interviewing the child, parents, and other relevant parties; (2) reporting the findings of the interviews to the court; and (3) making recommendations to the court regarding custody arrangements. See id.[2]

The seminal case explaining the Third Circuit's policy of extending judicial immunity to custody evaluators is Hughes v. Long, which stems from "an acrimonious child custody

---

[2] Court-appointed doctors acting as custody evaluators do not receive *absolute* or *prosecutorial* immunity for actions in child custody proceedings because, unlike prosecutors and social workers, (1) they are not responsible for initiating such proceedings and (2) in making their recommendations to court, they do no serve as "advocates for the state." Hughes, 242 F.3d at 126. Rather, they function "more like witnesses or assistants to the court." Id.

proceeding that took place in the Court of Common Pleas of Chester County between [the plaintiff] and his former wife." Id. at 123. During the custody proceedings, the court recommended that a licensed clinical social worker conduct a full custody evaluation. Id. Although the social worker was appointed by the Court, the parents entered into a private contract with her whereby they each agreed to pay fifty percent of her fee. Id. The social worker sought the assistance of a licensed clinical psychologist to complete psychological testing of the family and conduct the custody evaluation. Id. Upon completion, the social worker reported her findings to the court and recommended that joint custody be awarded to the plaintiff and his ex-wife. Id. The court adopted the social worker's recommendation, and shortly thereafter, the plaintiff filed suit against the social worker and clinical psychologist in federal court alleging (1) violation of his familial rights in under the Fourteenth Amendment of the United States Constitution; (2) violation of his civil rights under 42 U.S.C. §§ 1983 and 1985; and (3) several state law violations including, inter alia, defamation and breach of contract. Id. at 123-24.

The Hughes court ultimately dismissed the plaintiff's §§ 1983 and 1985 claims on the basis of judicial immunity. Id. at 128. The court reasoned that the social worker and the clinical psychologist "acted as 'arms of the court,' similar to a guardian ad litem or a court-appointed doctor or psychologist, a non-judicial person who fulfills a quasi-judicial role at the court's request." Id. at 126. The court highlighted that the functions performed by the defendants - gathering information, conducting an evaluation, and making a custody recommendation - were "intimately related and essential to the judicial process because they aid[ed] and inform[ed] the court in its discretionary duties." Id. at 127. The court further explained that without child custody evaluators such as the defendants, judges would find themselves in the undesirable

position of having to "make custody recommendations with little, if any, unbiased information about the family." See id. See also Galvani, 2008 WL 7821748, at *7 (explaining that judicial immunity is extended to court-appointed psychologists whose role is limited to conducting evaluations and making recommendations to the court and alluding that exposing such individuals to liability would hinder the appropriate exercise of independent judgment).

The Court reached a similar conclusion in Shallow v. Rogers, No. 05-6227, 2006 WL 924990 (E.D. Pa. Apr. 6, 2006). This case stems from a child custody case in the Court of Common Pleas of Montgomery County where the presiding judge ordered a psychological evaluation of the entire family and ordered the plaintiff to pay fifty percent of the cost for the evaluation. Id. at *1. The plaintiff initially refused to comply and the court held him in contempt, incarcerated him, and conditioned his release on his compliance with the order. Id. Afterwards, the plaintiff reluctantly entered into a contract with the psychologist and participated in the evaluation. Id. Soon thereafter, however, the plaintiff filed a § 1983 action against several individuals, including the psychologist, who he claimed coerced him to participate in the psychological examination against his will. Id. Applying the reasoning of Hughes, the court dismissed the claims against the psychologist on the grounds that the court-appointed psychologist charged with conducting the custody evaluation was entitled to judicial immunity because he acted as an "arm of the court." Id. at *4.

Here, similar to the findings in Hughes and Shallow, the court finds that even with the facts construed in the light most favorable to Plaintiff, Plaintiff's Section 1983 action is barred by the doctrine of judicial immunity, and thus must be dismissed with prejudice for failure to state a claim. In compliance with the Montgomery County Court of Common Pleas' December, 5, 2006

Custody Evaluation Order, Plaintiff and John Doe retained the services of the Defendant, a psychologist, for the purposes of conducting a custody evaluation to assist the court in rendering a custody decision. Defendant performed the precise functions outlined in Hughes that support the determination that she acted as an "arm of the court." First, Defendant engaged in fact-finding by meeting with and interviewing Plaintiff, John Doe, and T.K. between January 24, 2007 and April 1, 2007. Second, on May 4, 2007, Defendant reported her findings, that Plaintiff suffered from MSBP and other conditions and was a danger to the child, to the court. And third, Defendant made the recommendation that John Doe be granted legal and physical custody of T.K. Plaintiff has misconstrued Defendant's role in the custody proceeding by alleging that Defendant"sought out and obtained" the custody order. Defendant was not responsible for initiating the custody proceeding, nor was she ultimately responsible for the court's custody order. Rather, the family court used Defendant's evaluation to inform its decision to issue an emergency custody order granting full custody to John Doe.

The Court believes it important to note that the fact that a later, final custody agreement was reached which provided both parents with shared physical and legal custody of T.K. and the fact that the family court eventually dismissed Defendant's findings that Plaintiff suffered from MSBP have no bearing on the conclusion that Defendant is shielded by judicial immunity. Child custody evaluators play an indispensable role in assisting the court to make informed, unbiased custody award decisions. This Court's holding that judicial immunity applies to Defendant with respect to the role she played in the custody determination aligns with this jurisdiction's policy of protecting and furthering the exercise of independent judgment so critical to the sensitive task of making child custody awards. Just as it would undermine this important policy consideration to

assess liability to a court-appointed evaluator whose custody recommendation is adopted by the court, so too would it undermine this policy consideration to assess liability to a court-appointed evaluator whose custody recommendation is later rejected by the court.

With respect to Plaintiff's Section 1985 claim, the Court finds that this claim is also barred by the doctrine of judicial immunity and must be dismissed with prejudice for failure to state a claim. As an initial matter, the Court notes that Plaintiff's Complaint fails to assert any facts from which a reasonable fact-finder could conclude that a conspiracy existed. Plaintiff also fails to provide any argument in her Response to Defendant's Motion to Dismiss to support her claim that a violation of Section 1985 occurred. Furthermore, even if Plaintiff's Complaint was sufficient to establish a prima facie case with respect to the Section 1985 claim, the Third Circuit has made clear that, like Section 1983 claims, judicial immunity also applies to Section 1985 claims against court-appointed custody evaluators such as Defendant. See Hughes, 242 F.3d at 128 n.4 (holding that "judicial immunity insulates the entirety of [the defendants'] conduct from liability premised on alleged §§ 1983 & 1985 violations").

Finally, the Court finds that Plaintiff's Section 1988 claim must also be dismissed with prejudice for failure to state a claim because Plaintiff cannot prove a deprivation of a right secured by the United States Constitution, which is a prerequisite to establishing a prima facie case for a Section 1988 claim.[3]

**II. Dismissal of Counts I, II, III, V, VI, and VII under Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction**

"Federal courts have an ever-present obligation to satisfy themselves of their subject

---

[3] The Court notes that granting any future request for leave to amend Plaintiff's Complaint with respect to Count IV would be futile. Plaintiff cannot amend the Complaint to state a claim on which relief could be granted because of the applicability of judicial immunity.

matter jurisdiction and to decide the issue *sua sponte*." Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995). Federal district courts have subject matter jurisdiction over cases that meet the standards for diversity jurisdiction and cases that raise federal questions. See 28 U.S.C. §§ 1331-1332. A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). A federal district court has federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). When neither standard applies and a "federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." Arbaugh v. Y&H Corp., 546 U.S. 500, 502 (2006).

Here, it is apparent from Plaintiff's Complaint that no basis for diversity jurisdiction exists because all parties are citizens of Pennsylvania. Thus, the Court may only retain jurisdiction over Plaintiff's claim if her Complaint asserts a federal question. As previously discussed, the only count in Plaintiff's Complaint invoking federal question jurisdiction was Count IV, which is dismissed for failure to state a claim.

Without a federal claim, Plaintiff's Complaint only includes state law claims based on various tort theories and breach of contract. Under 28 U.S.C. § 1367 ("Section 1367"), a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Stated otherwise, a prerequisite to the federal court's exercise of pendent jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before

the court. See 28 U.S.C. § 1367. When "the district court has dismissed all claims over which it has original jurisdiction," the district court has the express authority to decline to exercise supplemental jurisdiction over any related state law claims. 28 U.S.C. § 1367(c)(3). See also Growth Horizons, Inc. v. Del. County, Pa., 983 F.2d 1277, 1285 (3d Cir.1993); Greenwood Partners, L.P. v. Cimnet, Inc., No. 201CV06624LDD, 2003 WL 22238981, at *4 (E.D. Pa. Sept. 2003) ("a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction").

Furthermore, cases removed to federal court are subject to remand under 28 U.S.C. § 1447(c). The district court must remand a case "[i]f at any time before final judgment it appears that the . . . court lacks subject matter jurisdiction ..." 28 U.S.C. § 1447(c). See also Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208, 213 (3d Cir. 1997) (citing Int'l Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 87 (1991)). The removal statutes are to be strictly construed and all doubts should be resolved in favor of remand. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir.1990).

Here, because Plaintiff's federal claims fail as a matter of law, the Court is well within its right to refuse to exercise supplemental jurisdiction over the remaining state law claims. The Court believes that the alleged violations of state law more properly determined by the state court. Those claims, therefore, are dismissed without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction. Furthermore, remand is appropriate to allow the state court to resolve the remaining state law claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part. Count IV

of Plaintiff's Complaint is dismissed with prejudice for failure to state a claim. The remaining claims are dismissed without prejudice for lack of subject matter jurisdiction. The case is remanded to the Court of Common Pleas of Chester County to resolve Counts I, II, III, V, VI and VII of the Complaint. An appropriate Order follows.